# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

VINCENT PAYNE,

    Plaintiff,

v.

C/O NICHOLAS J. GIFFORD, et al.,

    Defendants.

Case No. 1:16-cv-514

Barrett, J.
Bowman, M.J.

## REPORT AND RECOMMENDATION

Pursuant to local practice, this case has been referred to the undersigned for a Report and Recommendation on two pending dispositive motions. For the reasons that follow, the undersigned now recommends that Defendants' motion for summary judgment be GRANTED and that this case be DISMISSED.

### I.    Factual and Procedural Background

Plaintiff filed a *pro se* prisoner civil rights complaint that alleges that on March 11, 2016, during the time that Plaintiff was incarcerated at the Southern Ohio Correctional Facility,[1] Defendant Correctional Officer Gifford approached his cell and told him to cuff up in preparation for a cell search. The complaint alleges that Plaintiff complied with C/O Gifford's order, but requested a mental health visit. Plaintiff further alleges that he told Gifford he would not enter the shower as directed, unless Gifford confirmed that he

---

[1]The record lists Plaintiff's current address as the Madison Correctional Institution in London, Ohio, although Defendants also represent that the expiration of Plaintiff's stated prison term was to have occurred on July 20, 2017. (Doc. 39 at n.1). Reference to the Ohio Department of Rehabilitation & Corrections website on August 30, 2017 confirms that Plaintiff is no longer in custody. See https://appgateway.drc.ohio.gov/OffenderSearch  Plaintiff has failed to provide this Court with his current address, which may constitute a failure to prosecute. Plaintiff's release also renders moot his requests for injunctive relief, including early release.

would contact mental health. According to Plaintiff, Gifford proceeded to try "tactical training maneuvers," which ultimately resulted in Plaintiff being "thrown" into the shower and sprayed with pepper spray commonly referred to as "O.C. spray." Plaintiff alleges that he slipped and fell as a result of the wet floor and Gifford's actions, resulting in unspecified injury to his eyes and ear. Plaintiff also alleges that he was not taken to the infirmary for more than an hour, and that Gifford, Defendant Officer Dillow[2] (who later transported him to segregation), and Nurse Tipton all failed to decontaminate him, leaving him to suffer the effects of the pepper spray for a prolonged period.

On initial screening under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), the undersigned entered an Order and a Report and Recommendation ("R&R") that permitted Plaintiff's Eighth Amendment "excessive force" claim to proceed against Defendant Gifford, as well as a separate claim that three Defendants (Gifford, Dillow and Tipton) had exhibited "deliberate indifference" to Plaintiff's allegedly "serious medical needs." (Doc. 6). A claim alleged against a fourth Defendant (Linnea Mahlman) was dismissed *sua sponte* for failure to state any claim. (*Id.*)

On May 3, 2017, Defendants filed a motion to dismiss Plaintiff's complaint based upon his failure to fully administratively exhaust his claims prior to filing suit in this Court, as required by the Prison Litigation Reform Act. Plaintiff filed a response in opposition to that motion, which remains pending.

Following the close of discovery, on May 31, 2017, Defendants also filed a motion for summary judgment on the merits of Plaintiff's claims. Although Plaintiff has engaged in a vigorous motion practice, filing fourteen motions of his own as well as

---

[2]According to his affidavit, Defendant Dillow is a Correction/Counselor Sergeant.

responding to other motions filed by Defendants, he has declined to file any response to the Defendants' motion for summary judgment. This Court previously extended Plaintiff's deadline to file a response to Defendant's motion for summary judgment,[3] specifically warning Plaintiff that if he failed to file a response, "this Court will consider Defendants' motion unopposed and may grant said motion to the extent it is factually and legally supported." (Doc. 53 at 9).

## II. Analysis of Pending Motion for Summary Judgment

Defendants' 42-page memorandum in support of their motion[4] provides extensive argument, replete with evidentiary support, for granting judgment in their favor. The undersigned has closely examined all of the arguments presented, together with the evidence of record and citations to legal authority. Having concluded that examination, the undersigned finds all but one argument (concerning exhaustion) to be sufficient grounds to recommend judgment in Defendants' favor. Because the Defendants' motion is both strongly supported by facts and law and because it remains unopposed, the Court finds no need to review each of Defendants' arguments in detail. Instead, the Court will briefly discuss the standard of review and those arguments that the undersigned finds to be *most* persuasive.

### A. Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the

---

[3]Plaintiff's response to Defendants' motion for summary judgment was initially due not later than June 26, 2017. The undersigned extended that deadline, *sua sponte*, until August 15, 2017. (Doc. 53).
[4]Defendants sought and were granted leave to exceed the usual 20 page limit for their memorandum in support of their motion.

3

movant is entitled to judgment as a matter of law." A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248-49. The mere existence of a scintilla of evidence to support the non-moving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the nonmoving party. *Id.* at 252.

Defendants have submitted, as evidentiary exhibits to their motion for summary judgment, affidavits by all three Defendants and by Deputy Warden William Cool, Use of Force records, Plaintiff's medical records, and video evidence of the March 11, 2016 incident, all of which constitutes overwhelming probative evidence that supports entry of judgment in Defendants' favor. By contrast, Plaintiff has pointed to no evidence at all to demonstrate the existence of any genuine issue of any material fact in this case.

### B. Eighth Amendment Standards

Both Plaintiff's excessive force claim against Defendant Gifford, and his claim that all three Defendants exhibited deliberate indifference to his serious medical needs, arise under the Eighth Amendment. An Eighth Amendment claim requires a prisoner to

satisfy both an objective component, which requires the pain that is inflicted to be "sufficiently serious," and a subjective component, which focuses on the state of mind of the prison official. *See Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (citations omitted).

With respect to the objective component, the Supreme Court has clarified that it is unnecessary for an inmate to prove that he suffered from any significant injury requiring medical attention in order to prove cruel and unusual punishment, *see Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178 (2010). Still, the extent of injury may be considered in determining whether the assertion of force "'could plausibly have been thought necessary' in a particular situation." *Id.,* (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). Moreover, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson v. McMillian*, 503 U.S. 1, 9, (1992). The Eighth Amendment's "prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Wilkins*, 130 S. Ct at 1178 (quoting *Hudson*, 503 U.S. at 9).

In terms of the subjective component, the Supreme Court has explained that "whenever prison officials stand accused of using excess physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley*; whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7; *Wilkins v. Gaddy,* 130 S. Ct. at 1178-1179 ("Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts.").

Therefore, to prevail on his excessive force claim, Plaintiff must prove not only that the use of force by Defendant Gifford was <u>objectively</u> unreasonable, but that Gifford employed that force "maliciously and sadistically for the very purpose of causing harm." *Williams v. Curtin*, 631 F.3d at 383 (quoting *Hudson,* 503 U.S. at 6 (internal quotation marks omitted)).  In reviewing excessive force claims, courts may consider "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted." *Id.* (quoting *Whitley,* 475 U.S. at 321).  Given the evidence produced by Defendants here and the circumstances under which Defendant Gifford deployed relatively minimal force, the undersigned concludes as a matter of law that Plaintiff has failed to demonstrate either the objective or the subjective elements of his claim.

Like his excessive force claim, Plaintiff's deliberate indifference claim arises under the Eighth Amendment, which "forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward [his] serious medical needs."  *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  Such a claim also requires a plaintiff to prove both objective and subjective components.  Specifically, a plaintiff must put forth evidence to show a "sufficiently serious" medical need, and that the defendants acted with "a sufficiently culpable state of mind in denying medical care." *Blackmore*, 390 F.3d at 895.  Here, the unrebutted evidence produced by Defendants confirms that Plaintiff did not have any serious medical needs arising out of the March 11, 2017 incident, and that none of the Defendants demonstrated any subjective intent to cause Plaintiff harm by failing to attend to his *de minimis* injuries.

### C. Unrebutted Factual Record Evidence Submitted by Defendants

Because Defendants' evidence is unrebutted, the Court credits Defendants' account of relevant events on summary judgment. That account differs significantly from the allegations of the complaint. The Defendants' evidence shows that Plaintiff refused to comply with the repeated direct orders of Defendant Gifford to proceed into the shower area, and that Plaintiff physically resisted Defendant Gifford when he attempted to use a physical escort technique to direct him. The force eventually deployed by Gifford was extremely brief and *de minimis*, and was eminently reasonable under the circumstances. In addition, Plaintiff appears to have suffered from no more than *de minimis* injuries as a result of the incident, and received appropriate medical care at all times.

Contrary to Plaintiff's account that he willingly complied with all orders of C/O Gifford, the video record, affidavit of Defendant Gifford, and other documentary evidence shows that Plaintiff stopped short of the shower and squared off against C/O Gifford, refusing to continue walking forward into the shower area as instructed. Even during the walk down the corridor just prior to the brief struggle outside the shower area, Plaintiff repeatedly turned back toward Defendant Gifford, in violation of institutional rules, with Gifford continually verbally directing him to continue forward.

The record reflects that Gifford attempted to apply an escort technique once the two arrived at the shower area, but that Plaintiff began to pull away. (Doc. 49-4, Doc. 49-1, DVR/Video). After Gifford again repeatedly directed Plaintiff to enter the shower, with Plaintiff continuing to refuse that order, Gifford can be seen briefly shoving Plaintiff toward the shower area. (DVR at 7:23:56). The video and other documentary evidence

confirms that Plaintiff continued to resist. Eventually Gifford took hold of Plaintiff and physically pushed him into the shower area, using an "approved escort technique" with his hands on Plaintiff. (Doc. 49-4, DVR). The physical struggle to force Plaintiff into the shower area was extremely brief, lasting barely more than a minute, from 7:24:24 to 7:25:33 on the video. The video shows Gifford pushing Plaintiff toward the shower while Plaintiff plants his legs and uses the force of his body to resist.[5] Although Plaintiff is out of the camera's view once Gifford succeeds in physically pushing him into the shower area, Gifford remains in view. Other evidence confirms that Plaintiff continued to resist, attempting to charge toward Gifford who remained in the hallway outside the shower door. (Doc. 49-4; *see also* Doc. 49-3). In response, Gifford deploys his pepper spray for one second toward Plaintiff's facial area, thereby stopping Plaintiff and allowing the shower door to close, preventing Plaintiff from leaving. (DVR at 7:25:35).

Plaintiff's complaint alleges that his injuries occurred after he slipped and fell because the shower floor was slippery and he was off-balance from being pushed. However, Gifford's affidavit denies that Plaintiff fell at all in the shower area. (Doc. 49-4 at ¶19). After the shower door was closed, Gifford retreated from the area and Defendant Dillow was sent to escort Plaintiff to segregation. Dillow's affidavit reflects that upon his arrival, Plaintiff was in the shower under the running water, with access to soap and water to address any discomfort from the O.C. spray. (Doc. 49-5 at ¶10). He was offered clean clothing when placed in segregation, and there was a sink for water and soap that Plaintiff had at his disposal in segregation. (*Id.* at ¶14).

---

[5]Although Plaintiff's hands remained cuffed behind his back, the video evidence clearly shows Plaintiff's physical resistance through use of his body.

8

Plaintiff was subsequently taken to the infirmary for evaluation, where Nurse Tipton noted no obvious injuries and noted that Plaintiff did not appear to be injured or in distress, other than a very minor superficial abrasion of approximately 1/8" on Plaintiff's left wrist. Nevertheless, Nurse Tipton noted Plaintiff's verbal complaints of soreness behind his right ear, soreness to his right scapula, and soreness to his right elbow. She also noted his full range of motion and the lack of any apparent swelling or other observable injuries to any other area except for his left wrist. (Docs. 49-6; 49-7). Pursuant to policy, full color photos of all pertinent areas were taken which provide additional evidence confirming the lack of any visible injuries. (Doc. 49-7). Nurse Tipton offered ibuprofen and applied topical antibiotic ointment to the wrist abrasion. More than two months after the incident, on May 14, 2016, Plaintiff visited the infirmary and complained of shoulder and back pain, relieved by ice and naproxen. He made a similar complaint on May 27, 2016. On June 2, 2016, he returned to the infirmary with similar complaints but was inconsistent with his responses when asked about the location of his pain. He did not appear to be in any distress. (Doc. 49-6 at ¶¶ 16-19). He demanded stronger pain medication and became argumentative when medical staff apparently declined that request. (*Id.* at ¶21; *see also* Doc. 49-7 at 11).

A Use of Force Committee concluded that the relatively minimal use of physical force and OC spray by Gifford on March 11, 2016 was fully justified, to control or and/or subdue a combative inmate who was refusing to obey a direct order. (Doc. 49-3).

### D. The Failure to Show the Objective or Subjective Components of Any Eighth Amendment Claim

#### 1. The Excessive Force Claim Against Gifford

The Supreme Court has explained that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Hudson v. McMillian*, 112 S. Ct. 995, 1000 (1992) (internal quotation and citation omitted). The DVR footage alone confirms that the force employed under the circumstances was objectively reasonable and not excessive. To the extent any ambiguity exists, the Defendants' additional affidavits and documentary exhibits confirm that the brief pushing or shoving and minimal use of pepper spray against Plaintiff by Defendant Gifford did not violate Eighth Amendment standards. The Defendants' evidence that Plaintiff sustained no more than *de minimis* injuries from the incident also lends strong support to the conclusion that only *de minimis* force was used. Because the amount of force he used was not objectively unreasonable, Defendant Gifford is entitled to summary judgment

In addition, Plaintiff also has failed to show the subjective element of an excessive force claim. On initial screening, the Court assumed the existence of the subjective element of Plaintiff's claim based upon a liberal interpretation of Plaintiff's allegations that he was "thrown" into the shower by Gifford and O.C, spray deployed for no reason at all, at a point when Plaintiff was handcuffed and compliant with all orders. However, even Plaintiff's allegations present a close question on the subjective element of his claim, as he alleges not so much an intentional injury from Defendant's shove but instead that he fell and was injured after losing his balance on the wet floor after being
10

pushed. Regardless, all of the evidence submitted by the Defendants unequivocally proves that Defendant Gifford used no more force than was necessary in an effort to restore discipline, in a manner that evinces no subjective intent to cause Plaintiff harm.

### 2. Deliberate Indifference to Serious Medical Needs Claim

Plaintiff also has failed to rebut Defendants' evidence demonstrating a lack of either the objective or subjective elements of his deliberate indifference claims against the three Defendants. He complains that the Defendants did not permit him to decontaminate himself from the brief use of the O.C. spray, but the evidence shows that he was already in the shower, with the water running, prior to his transport by Dillow to segregation (where he also had access to soap and water) and to the infirmary (where he made no complaints of injury relative to the use of the pepper spray). Similarly, although he alleges that Nurse Tipton exhibited deliberate indifference to his eye and ear injuries, his medical records confirm that he sustained no more than *de minimis* injuries that were closely examined and treated. All Defendants are therefore entitled to summary judgment on this claim.

### E. Qualified Immunity and Eleventh Amendment Immunity

The interests of judicial economy disfavor extensive analysis, but it is worth pointing out that because Plaintiff has failed to prove that any of the three Defendants violated any of his rights under the Eighth Amendment on the record presented, all three Defendants are entitled to qualified immunity in their individual capacities. In addition, the Eleventh Amendment bars Plaintiff's claims against the Defendants in their official capacities.

## F. Exhaustion Under the Prison Litigation Reform Act

As stated at the outset of this R&R, the undersigned finds persuasive and well-supported each and every argument presented by Defendants in favor of summary judgment, including those not specifically discussed herein, with one exception. In both Defendants' motion to dismiss (Doc. 44) and in their motion for summary judgment, Defendants argue that this lawsuit should be dismissed for "lack of jurisdiction" due to Plaintiff's failure to fully exhaust his administrative remedies. The PLRA requires that prisoners exhaust all available administrative remedies before filing a lawsuit in federal court to challenge their conditions of confinement. *See* 42 U.S.C. § 1997(e)(a); *Woodford v. Ngo*, 548 U.S. 81, 84 (2006).

Contrary to Defendants' argument, the issues of exhaustion is not jurisdictional, *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015), though it is mandatory. *Id.*; *see also Jones v. Bock*, 549 U.S. 199, 211 (2007). The failure to exhaust under the PLRA is an affirmative defense, on which the Defendants bear the burden of proof. *Napier v. Laurel County, Ky*, 636 F.3d 218, 225 (6th Cir. 2011). As always, when evaluating the evidence under summary judgment, all reasonable inferences are to be drawn in favor of the non-moving party and judgment is appropriate only if Defendants establish the absence of any genuine dispute of material fact regarding non-exhaustion. *Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012). Unlike the arguments in favor of judgment on the merits of this case, for which the Defendants are entitled to dismissal of all claims with prejudice, if a claim is dismissed on the procedural ground of failing to exhaust under the PLRA, the dismissal is without prejudice. *See, e.g., Boyd v. Corr Corp. of Am.*, 380 F.3d 989, 994 (6th Cir. 2004).

Before an Ohio prisoner can file suit, he must complete a three-step grievance procedure provided under Ohio law. Plaintiff's complaint states that he filed an informal complaint on March 20, 2016, in conformity with Step 1 of the Grievance process, and that he appealed the denial of that complaint by filing a Notification of Grievance ("N.O.G.") in conformity with Step 2 of the same process, on April 12, 2016. The N.O.G. is to be filed with the Institutional Inspector, who is to respond in writing within fourteen days of receiving the appeal – a date that in this case ostensibly required a response on or before April 26, 2016. O.A.C. § 5120-9-31(K)(2). Defendants do not dispute Plaintiff's statements that he exhausted the first two steps of the prison's administrative grievance process.

However, Plaintiff also states in his complaint that the "Institutional Inspector has not rendered a decision." (Doc. 1-1 at 3). Plaintiff signed his complaint on April 27, 2016, and it was filed in this Court on May 2, 2016. While he did not wait overly long for a response to his Step 2 appeal, and case law confirms there are circumstances in which institutional authorities may be afforded additional time, technically Plaintiff waited until after the expiration of the deadline by which he should have received a response from the Institutional Inspector before filing this case.

Defendants do not reference the fact that the Institutional Inspector apparently failed to respond within the requisite time frame to Plaintiff's Step 2 grievance, but instead argue *solely* that dismissal and/or summary judgment in their favor is required because Plaintiff failed to proceed through the final Step 3 appeal required under the grievance procedure. The Ohio Administrative Code provides that if an inmate is dissatisfied with a denial of his Step 2 appeal, he must file a final appeal with the Office

13

of the Chief Inspector, who has thirty days to respond. O.A.C. § 5120-9-31(K)(3). Here, because there is no evidence that the Institutional Inspector timely responded to Plaintiff's Step 2 grievance, and Defendants offer only argument (as opposed to evidence) that Plaintiff was required to but failed to complete Step 3, the undersigned finds a genuine issue of material fact remains as to whether this case should be dismissed for failure to exhaust. Plaintiff's duty to comply with Step 3 of the grievance procedure arguably would arise only upon the timely denial of his Step 2 grievance. While the record before the undersigned remains unclear, case law suggests that there are occasions in which an institution's own failure to comply with its duties under Ohio's grievance process may excuse an inmate's duty to fully exhaust, if the institutional failure prevented the plaintiff from complying with his duty.

This is not to say that is the case presented here. It is entirely possible that, if the record were better developed,[6] the Defendants would prevail on the non-exhaustion argument.[7] However, the undersigned cannot recommend summary judgment or dismissal for failure to exhaust on the record presented, which remains too ambiguous to warrant entry of judgment on this basis. *Accord Surles v. Andison*, 676 F.3d at 458.

### III. Conclusion and Recommendation

For the reasons stated, **IT IS RECOMMENDED THAT** Defendants' motion for

---

[6]This Court most commonly recommends dismissal for failure to exhaust when Defendants have submitted copies of the grievances forms filed by the inmate, along with institutional responses, and an affidavit or other documentation confirming the lack of complete exhaustion. In this case, the Defendants have chosen to rely solely on the allegations of the complaint, which for the reasons stated, fail to fully establish that Defendants are entitled to judgment based on a lack of exhaustion.

[7]In his response in opposition to Defendants' motion to dismiss for failure to exhaust, Plaintiff argues that he did in fact fully exhaust his administrative remedies prior to filing suit. However, he also states that he received "the decision on my grievance on 6/09/16 at S.O.C.F." (Doc. 45 at 3). While ambiguous, the undersigned infers that Plaintiff is referring to a June 9, 2016 denial of his Step 2 grievance, received shortly after this suit was filed.

summary judgment (Doc. 49) be **GRANTED** on all grounds asserted except exhaustion, and that Defendants' motion to dismiss (Doc. 44) be **DENIED**. **IT IS FURTHER RECOMMENDED** that this case be dismissed with prejudice, and closed.

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

VINCENT PAYNE,

    Plaintiff,

v.

C/O NICHOLAS J. GIFFORD, et al.,

    Defendants.

Case No. 1:16-cv-514

Barrett, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).